**COUNTRY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**Richard S. MATNEY, et al., Respondent.**

**No. WD 56694.**

Missouri Court of Appeals, Western District.

Aug. 22, 2000.

David T. Butsch, Clayton, for appellant.

Mark D. Pfeiffer, Columbia, for respondent.

Before JAMES M. SMART, Jr., Presiding Judge, JOSEPH M. ELLIS, Judge, and RONALD R. HOLLIGER, Judge.

PER CURIAM.

This is an appeal from a declaratory judgment action filed by the Appellant, Country Mutual Insurance Company, to determine whether certain injuries and damages were covered under an automobile policy issued by Appellant. The trial court entered judgment for the injured parties and against Country Mutual after ·the parties had submitted a joint stipulation of facts and filed cross motions for summary judgment. Country Mutual appeals.

### Factual Background

On May 21, 1994, Country Mutual Insurance Company ("Appellant") issued an automobile insurance policy to Kenneth Skelton, a resident of Olney, Illinois. The policy provided coverage for a 1984 Ford Crown Victoria LTD ("Ford") that Skelton owned at the time the policy was issued. Included in the policy were the following terms:

**SECTION 1–LIABILITY INSUR-
ANCE**
**Bodily Injury, Coverage A**

**Property Damage, Coverage B**

...**we** promise to pay all sums in behalf of an insured which the insured
becomes legally obligated to pay as damages because of:

1. bodily injury (Coverage A), including death resulting from that bodily injury, sustained by any person;

2. damage to or destruction of property (Coverage B), including loss of use. The bodily injury or property damage must be caused by an accident resulting from the ownership, maintenance or use of an **insured vehicle**....

### Persons Insured, Section 1

...an **insured** is:

1. with respect to an **insured vehicle**:

   a. **you** and any resident of the same household as you;

   b. anyone using an **insured vehicle** with **your** permission or the permission of an adult **relative**;

   c. anyone else, but only with respect to liability resulting from acts or omissions of an **insured** as defined in a. or b. above;

### Insured Vehicles, Section 1

...an **insured vehicle** is:

1. any vehicle described on the declarations page;

The "Definitions" section further explained that "**You, Your, Yourself** means the person named as Insured on the declarations page of this policy and that person's spouse if a resident of the same household. You, your, yourself also refers to any legal entity named as Insured on the declarations page." On that declarations page, Kenneth Skelton was listed as the "INSURED," and an "84 Ford" was one of two autos identified as insured vehicles.

On September 25, 1996, Skelton conveyed the Ford as a gift to his daughter, Kimberly Ralston, assigning the title to her. On October 25, 1996, Ralston made application for Missouri title to the car. That title was issued on November 7, 1996, five days after the auto accident that precipitated this dispute. On November 2, 1996, one Mario Rodriguez was driving the Ford with Ralston's consent on Route B in Boone County, Missouri, when he crossed the road's center line, striking another vehicle driven by Jennifer M. Wann and in which Richard S. Matney, Robert K. Chambers and Morris A. Chambers ("Respondents") were passengers. It is not disputed that the negligent conduct of Rodriguez was the proximate cause of the accident.

On February 9, 1998, Appellant filed a petition for declaratory judgment in the Circuit Court of Boone County, joining Rodriguez, Skelton, Matney, Robert Chambers, Morris Chambers and Jennifer Wann as defendants. In its petition, Appellant sought to have the court declare that it had no obligation under the insurance policy to any defendant with respect to the accident for the following two reasons: (1) At the time of the accident, Skelton did not own the Ford, and, thus, he had no insurable interest in it; and (2) At the time of the accident, Ralston was not a member of Skelton's household, and, thus, under terms of the policy, no coverage existed for her, a non-resident, or for a permissive user. Skelton, Wann and Rodriguez did not timely file answers or responses to Appellant's petition, and, on May 11, 1998, the circuit court issued interlocutory default judgments to each of them accordingly. Respondents Matney, Robert Chambers and Morris Chambers did timely file answers and claims for affirmative relief. The parties agreed to and filed a joint stipulation of facts on September 14, 1998. Therein, it was stipulated, among other things, that: (1) Skelton conveyed the Ford by gift to his daughter, Ralston; (2) at the time of the accident, Rodriguez was operating the vehicle with Ralston's consent; (3) Rodriguez's negligent conduct was a proximate cause of the accident; and (4) Matney, Robert Chambers and Morris Chambers assert that the policy provides coverage for their injuries sustained in the accident, a claim that Appellant denies. On September 21, 1998, Respondents filed two separate motions for summary judgment, and, on November 16, 1998, Appellant filed its own motion for summary judgment.

On December 10, 1998, the circuit court issued an amended judgment sustaining Respondents' separate motions for summary judgment, and it overruled Appellant's motion for summary judgment. In its amended judgment, the court stated that the insurance policy was in effect at the time of the accident, and Mario Rodriguez was insured under its terms and, thus, entitled to indemnification thereunder up to the policy limits of $50,000 per person and $100,000 per accident for the injuries and damages sustained by Respondents. This appeal ensued.

### Procedural Background

This court originally heard the appeal in division and handed down an opinion, authored by Judge Albert A. Riederer, on November 30, 1999. Shortly thereafter, Judge Riederer resigned from the court. Appellant then timely filed a Motion for Rehearing and/or Transfer in which it asserted that the opinion overlooked a material fact in that the term "relative" was defined in the policy. We granted rehearing, the case was reargued and again submitted. On rehearing, Appellant conceded in oral argument that it did not assert that Skelton's daughter was not a relative under the terms of the policy in the trial court, nor did it address the issue in its brief or the initial oral argument in this court. Rather, it first raised the issue in its Motion for Rehearing and/or Transfer. Moreover, in its oral argument on rehearing, Appellant abandoned the argument again, and asserted a new theory wherein it tried to distinguish the facts in *Pennsylvania National Mutual Casualty Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 605 S.W.2d 125 (Mo. banc 1980), upon which it had relied in the trial court, and in its brief and initial oral argument in this court.

■ Appellate review, even from the grant of summary judgment, or in court-tried cases, is limited to those issues put before the trial court. *Scott v. Edwards Transp. Co.*, 889 S.W.2d 144, 147 (Mo.App. S.D.1994); *St. Louis County v. McClune*, 762 S.W.2d 91, 92 (Mo.App. E.D.1988). It has long been the rule in Missouri that an issue which is not presented to the trial court is not preserved for appellate review. *Zundel v. Bommarito*, 778 S.W.2d 954, 957 (Mo.App. E.D.1989). Parties are bound by the position they took in the trial court and will not be heard on a different theory on appeal. *Scott*, 889 S.W.2d at 147. Were we now to consider the contentions raised by Appellant in its Motion for Rehearing and/or Transfer, or in oral argument upon rehearing, we would be considering theories not advanced in the trial court. *Id.* This we cannot do. An appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982); *Martin v. McNeill*, 957 S.W.2d 360, 364 (Mo.App. W.D.1997); *Sisk v. McIlroy and Associates*, 934 S.W.2d 567, 574 (Mo.App. S.D. 1996); *State ex rel. Missouri Highway and Transp. Com'n. v. Muegge*, 842 S.W.2d 192, 196 (Mo.App. E.D.1992).

Accordingly, we conclude that the decision reached by this court previously is correct and, therefore, adopt Judge Riederer's well-reasoned opinion, with only minor changes, and without attribution by quotation marks.

### Standard of Review

■ In reviewing a grant of summary judgment, we examine the entire record to determine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II School District*, 871 S.W.2d 444, 446 (Mo. banc 1994). We will review the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* The propriety of summary judgment is purely an issue of

law. *Id.* Our review is essentially *de* novo. *Id.*

### Discussion

■ Appellant claims the circuit court erred in granting summary judgment in favor of Respondents because Mr. Skelton's policy terminated with respect to the Ford when he transferred ownership of the car to his daughter. Specifically, Appellant claims that "[i]n order for an insurance policy to be effective, Missouri requires, as a matter of public policy, that the insured party have an 'insurable interest' in the insured property." Thus, Appellant further claims, when Skelton relinquished ownership of the car, he thereafter had no insurable interest in the car in that he "no longer faced the possibility that he would be responsible for an accident and thereby invoke the liability coverage of the policy." Respondents, on the other hand, argue that an "insurable interest" in the named insured is not a prerequisite to recovery against an insurer where, as is the case here, the insurance policy provides only liability coverage, and the policy does not contain language making "ownership" of the insured vehicle a precondition to coverage.

Appellant cites *Pennsylvania National Mutual Casualty Ins. Co. v. State Farm Mutual Auto. Ins. Co.,* 605 S.W.2d 125 (Mo. banc 1980), for the proposition that automobile insurance terminates upon a change of vehicle ownership. Relying heavily on *Pennsylvania National,* Appellant argues that the facts of that case are strikingly similar to those of the case at bar. In that case, Louis and Jewell Wells owned a 1960 Ford, and State Farm issued them an insurance policy that listed them as the named insureds and the car as the owned automobile. *Pennsylvania National,* 605 S.W.2d at 126. The policy defined "insured" to include the named insureds and any relative of either while a resident of their household. *Id.* The policy provided that Louis and Jewell were "sole owners" of the car and, as such, State Farm agreed:

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage, caused by accident arising out of the ownership, maintenance or use, ... of the owned automobile....

*Id.* at 127.

On June 21, 1968, title to the car was assigned to the Wells' son, Richard, as he became the car's owner. *Id.* at 126. Richard applied for title in his name on June 24, 1968, and it was issued to him on July 8, 1968. *Id.* However, on July 4, 1968, Richard, while driving the Ford, had a collision with another car driven by David Bentley. *Pennsylvania National,* 605 S.W.2d at 126. Bentley's auto was covered by a policy issued by Pennsylvania National that included uninsured motorist coverage. *Id.* Prior to July 4, 1968, State Farm had not been notified of the change in ownership of the Ford, and it had not cancelled or suspended the policy. *Id.*

Bentley filed suit for personal injuries and a declaratory judgment action to determine whether State Farm or Pennsylvania National was responsible for paying Bentley's claim. *Id.* Ultimately, the Missouri Supreme Court determined that the State Farm policy terminated with respect to the 1960 Ford when ownership of it was transferred to Richard Wells. *Id.* at 127–28. While acknowledging that Richard was covered under the policy as long as Louis and Jewell Wells were the owners of the Ford and Richard was a resident of his parents' household, the court said, "By general rule, however, liability coverage which is premised on 'ownership, maintenance or use' of the designated automobile, as with the policy in issue, terminates with respect to that automobile upon a change of ownership." *Pennsylvania National,* 605 S.W.2d at 127. In its reasoning, the court noted that the transfer of title affected the risk assumed by the insurer, in

that, after the transfer of title, Richard Wells was the legal owner with the right to control who drove the vehicle. *Id.* at 127–28. "The right of control is basic in determining the risk insured." *Id.* at 128.

■ Appellant argues that the determinative facts in this case are substantially similar to those in *Pennsylvania National.* According to Appellant, those facts are that: (1) Mr. Skelton had no control over who drove the vehicle after the transfer; and (2) it agreed to insure a middle-aged Illinois resident, not an unknown, young Missouri resident, and that, consequently, it would be manifestly unfair to require it to answer for a risk for which it had not bargained.

We disagree. The present case is distinguishable from *Pennsylvania National.* There, the insurance policy provided coverage for the "owned automobile," and it further provided that Louis and Jewell were the "sole owners" of the car. *Pennsylvania National,* 605 S.W.2d at 127. But in our case, the insurance policy provided coverage not for an "owned automobile," but rather for the injury or damage resulting from ownership, maintenance or use of an "insured vehicle." Further, the policy in the case at bar defined "insured vehicle" as "any vehicle described in the declarations page." In *Pennsylvania National,* the parties agreed that coverage on the car would terminate upon transfer of ownership to a third party. *Id.* The dispute in that case was between two insurance companies and concerned which one would be required to provide coverage. Pennsylvania National argued that a transfer of ownership to a party already insured under the State Farm policy would not terminate coverage thereunder since State Farm had received its premium, and the policy had not been suspended or cancelled prior to the accident. *Id.* Pennsylvania National thus contended that the transferee, Richard Wells, qualified as an insured prior to the transfer, but the Supreme Court disagreed, saying, "The possibility that an insured may incur liability because

of the operation or use of his automobile may be the only interest necessary to the validity of a liability policy . . . Such, however, is not this case." *Id.*

■ In construing an insurance policy, this court must apply general rules of contract construction, because insurance policies are contracts. *Capitol Indemnity Corp. v. Callis,* 963 S.W.2d 247, 249 (Mo. App. W.D.1997). Words used in the insurance policy are given their ordinary, everyday meaning unless it is evident that technical meanings should apply. *Id.* If the language is unambiguous, the court must enforce the insurance contract as written. *Lanigan v. Snowden,* 938 S.W.2d 330, 332 (Mo.App. W.D.1997). In our case, ownership of the designated vehicle is not, according to the terms of the policy, a precondition to coverage. As the Missouri Supreme Court said in *Pennsylvania National,* "Under certain circumstances the ownership of a vehicle may be irrelevant to the validity of an insurance policy that covers only liability for bodily injuries and property damages." *Pennsylvania National,* 605 S.W.2d at 127. There need not be an insurable interest in property covered by liability insurance where the risk insured against is based not on the ownership of the property but on the loss and injury caused by its use for which the insured might be liable. *Hall v. Weston,* 323 S.W.2d 673, 680 (Mo.1959). Thus, where, as here, the insurance policy provides liability coverage for a specific automobile and does not precondition coverage on ownership, transfer of ownership of the vehicle will not vitiate the policy.

The judgment of the trial court is affirmed.