Julie FINOCCHIO, Plaintiff/Appellant,

v.

William MAHLER and Amanda Mahler, Defendants/Respondents.

No. ED 77786.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 5, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2001.

Application for Transfer Denied
March 20, 2001.

Mark A. Panzeri; Aubuchon, Raniere & Lally, P.C., St. Louis, MO, for appellant.

John S. McCollough; Matthew P. O'Grady; St. Louis, MO, attorney for respondent.

CHARLES B. BLACKMAR, Senior Judge.

The plaintiff sued for damages for the wrongful death of her daughter, Amy Roberts. The defendants moved for summary judgment, supporting the motion by exhibits complying with Rule 74.04(e). The plaintiff responded with similar exhibits. In the view we take of the case it is not necessary to set out the underlying facts in detail, because the uncontroverted facts which we consider determinative are relatively few. In stating the facts we seek to give the plaintiff the benefit of all controverted matters of fact, and of all appropriate inferences that might be drawn from the facts in the record.

Defendant, William Mahler, his wife, and their two daughters occupied a residence in St. Louis County. Both parents worked and daughter Amanda, age 13, was often at home during days when school was not in session. Teenage girls frequently visited her at her home, and sometimes teenage boys appeared.

The parents allowed Amanda, who is also a defendant, to use the master bedroom while they were not at home, and her guests also spent some time in the bedroom, which contained a television set. The parents knew that Amanda had visitors who sometimes spent time in the master bedroom.

Among the boys who had visited the Mahler home was Daniel Troy, age 17. On one occasion in 1996 Amanda's father, William, suspected that some of the visiting boys, including Daniel Troy, had stolen some wrenches from the garage, and had instructed Amanda not to let Daniel come in the house. She apparently did not enforce this order.

William Mahler had acquired a Smith & Wesson 9 mm semiautomatic handgun. He stored the gun in the top drawer of dresser in the master bedroom under some clothes. The dresser drawer was not locked. The gun was not loaded when he stored it. He placed ammunition for the weapon in a night stand next to his bed. Nothing in the record indicates that Amanda knew that her father owned a gun or that there was a gun, or ammunition, in the house.

On July 5, 1997, a Saturday, Amanda was home without her parents. A close girlfriend was with her. She then invited a group of boys, including Daniel Troy, into the home. She considered Daniel "a rebel" and said that he had told her about having participated in a drive-by shooting. She and her guests were in the bedroom on that day and were going through her parents' belongings. Daniel found 9 mm shells in the night stand in the bedroom. Nothing in the submissions showed that Amanda was aware that he had intruded into the night stand.

The following day, Sunday, July 6, 1997, Amanda again invited Daniel, along with other teenagers, into the Mahler home and into her parents' bedroom. On this occasion he searched in the drawers and located the handgun, which he took from the drawer. He also found a clip of ammunition in the drawer. There is no indication that Amanda knew what he had done.

When he left the premises he took the gun and the clip with him.

On the next day, Monday, July 7, Daniel visited Amy Roberts in her parents' home. The precise location with respect to the Mahler residence is not shown, but Amanda knew Amy. Daniel had the stolen gun with him and recklessly discharged it. Amy was fatally injured by the bullet. Daniel pled guilty to theft, armed criminal action, and involuntary manslaughter.

The plaintiff filed suit against William and Amanda, seeking damages for her daughter's wrongful death. She asserts that persons in control of firearms have a duty to exercise the highest degree of care in avoiding injury to others. She claims that William was negligent in storing the gun in an unlocked drawer without a trigger lock or other safety device, and in permitting minors to have access to the bedroom in which the gun was stored. Amanda, she alleges, was negligent in that she "knew or should have known" of the presence of the gun on the premises, and allowed minors, including Daniel Troy, to have access to her parents' bedroom. The plaintiff now asserts that there are genuine issues of material fact, precluding summary judgment.

■ Supreme Court Rule 74.04 addresses summary judgment. The principles governing the granting of summary judgment in negligence cases are set out in *Martin v. City of Washington*, 848 S.W.2d 487 (Mo. banc 1993). The Court sets forth the historic listing of the essential elements of a claim for negligence, requiring the plaintiff to show that "(1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Id.* at 493. The opinion points out that the plaintiff has the burden of establishing each of these elements. If any element is not established, then the defendant is entitled to a directed verdict, a judgment notwithstanding the verdict, or, if moved for in compliance with Rule 74.04, a summary judgment.

There are many gun cases in Missouri and other American jurisdictions and the parties have diligently briefed those they consider closest to the present situation. The plaintiff argues, eloquently, that firearms are inherently dangerous, and that those who own and control firearms should be required to exercise the highest degree of care. She cites *Scheibel v. Hillis*, 531 S.W.2d 285, 287 (Mo. banc 1976), finding a petition alleging the abstracting of a gun from the defendant's dwelling, by a person known to the defendant to have dangerous propensities, sufficient as against a motion to dismiss. We have no hesitation in saying that firearms present inherent dangers, but we are not obliged to decide whether the duty of one in possession or control of a firearm is to exercise "the highest degree of care," or "ordinary care," or to meet some other test. Such standards are used in instructing juries in particular cases, and often the distinction is important. *See Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 157–59 (Mo. banc 2000). Here the issue is whether there is a case for the jury, and discussion of the details of instructing is premature.

The defendants argue that they owed "no duty" to the plaintiff's decedent with regard to the storage of the firearm, because injury to her could not reasonably be foreseen. We likewise refrain from considering this issue, which may give rise to numerous hypotheticals and cause problems in future cases, because we conclude that the plaintiff has failed to demonstrate that she could sustain her burden of demonstrating that any negligence on the part of the defendants was the "approximate cause" of the injury and death.

The law of "proximate cause" is discussed in depth, in 58 pages of dense prose, in W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, Ch. 7, 263–321 (5th Ed.1984). The authors suggest that the term is confusing and that no

wholly satisfactory rule has been established by the countless cases dealing with the subject. If a judge undertakes a novel explanation, seeking to reduce the general confusion, the opinion will probably be savaged by law professors.

■ The minimum causation requirement the plaintiff must meet, of course, is the "but for" test the showing that the accident would not have happened but for the act or omission of a defendant sought to be held liable. This test is met in the present case, but the plaintiff must show more.

Many opinions place great emphasis on foreseeability, either in defining the scope of the defendant's duty or in determining proximate cause. Some critics suggest that almost anything may be foreseeable by a person who exercises sufficient imagination (*cf.* Murphy's Law). Prosser and Keeton point out, however, that courts show great reluctance to hold a defendant liable if the chain of causation includes a series of events, subsequent to the initial act or omission, over which the defendant has absolutely no control. *See* Prosser and Keeton, pp. 301–19. The term "intervening cause" is frequently used by judges and criticized by professors, but still seems useful in describing the situation confronting us.

■ The defendant is not invariably excused from liability when the chain of causation includes a criminal act. *See Virginia D. v. Madesco Inv. Corp.*, 648 S.W.2d 881 (Mo. banc 1983). Although criminal conduct can hardly be said to be unforeseeable in this day and age, there remains consensus that liability should not be lightly assessed when the injury would not have happened but for criminal conduct. The overwhelming weight of authority holds that the owner of an automobile who parks the car in a public area with the keys in the ignition is not liable to a motorist or a pedestrian injured by the negligent driving of a thief who has an accident after stealing the car. *See Ford v. Monroe*, 559 S.W.2d 759 (Mo.App.1977). The same reluctance is seen in firearm cases. *See Faheen v. City Parking Corp.*, 734 S.W.2d 270 (Mo.App.1987). *Irby v. St. Louis County Cab Co.*, 560 S.W.2d 392 (Mo.App. 1977) (taxicab company not liable when driver was dispatched into allegedly dangerous neighborhood and murdered by a felon).

The plaintiff cites numerous cases from other jurisdictions. In the oft-cited case of *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957), a man who owned several guns showed his visiting grandsons, each aged 12, where his guns were located, and one grandson shot the other on the grandfather's premises with an automatic pistol which he took from the upper drawer of a chest located in a bedroom. The weapon was loaded. The court sustained a verdict for the injured grandson against the grandfather's estate. In *Seabrook v. Taylor*, 199 So.2d 315 (Fla.App.1967), a 14 year old boy went into his house, took a loaded gun from the house, and fired shots at some boys outside the house who had been teasing his brother. The court sustained a verdict for the plaintiff, finding that the gun owner was negligent in placing a loaded gun in a place where his children could find it. In *Long v. Turk*, 265 Kan. 855, 962 P.2d 1093 (1998), the court reversed a summary judgment for a parent whose son had taken the father's .357 Magnum handgun, concealed it in the car he was driving, and then fired a shot at some youths who were harassing him. The court found an issue of fact as to whether the son had his father's permission to take the weapon with him and reversed a summary judgment for the defendant father. These cases have two things in common which are not present here. First, the weapon was taken by a close relative of the owner, under circumstance which could hardly be called theft, and, second, the shooting occurred relatively closely to the taking in place and time.

Here the chain of causation included three acts over which the owner had no

**304**

control, two of which involved serious crimes. All took place after William Mahler had stored the weapon in the dresser drawer. First, Daniel Troy, on July 5, intruded into the night stand and found ammunition, from which he suspected the presence of a gun on the premises. Second, the next day, he stole the gun and a clip of ammunition from the dresser drawer and carried these articles away. Third, he appeared at another house on July 7 and, with culpable negligence, caused the weapon to fire a fatal shot. Our attention has not been called to any case in which recovery was allowed for so attenuated a chain of causation.

Our position is consistent with *McGrane v. Cline*, 94 Wash.App. 925, 973 P.2d 1092 (1999), in which a gun was stolen from a bedroom and used in a robbery seven weeks later, during which a fatal shot was fired, and with *Estate of Strever v. Cline*, 278 Mont. 165, 924 P.2d 666, 668 (1996), in which hoodlums stole a gun from under the seat of an unlocked vehicle, and a fatal shot was fired. The majority opinion in that case enunciated a broad concept of liability for negligently storing or exposing firearms, but concluded that the chain of causation, involving two criminal acts and one grossly negligent act, was so thin as to preclude liability of the defendant car owner. The special concurring opinion of Chief Justice Turnage holds that the case should be decided on the basis of reasonable foreseeability, without the extensive dicta involved in the principal opinion.

We conclude that the plaintiff, when put to the test of summary judgment, has failed to demonstrate that she could establish the element of proximate cause. Thus there is no genuine issue of fact as to this element, and the trial court properly entered summary judgment.

The judgment is affirmed.

MARY K. HOFF, C.J. and
KATHIANNE KNAUP CRANE, J.,
concur.