Dianna HEFFERNAN, Individually and as Next Friend for Minors, Steven Heffernan and Keith Heffernan, Plaintiffs/Appellants,

v.

Frederick REINHOLD, Reinhold Development Corp., Mastodon Meadows Homeowners Association, Estate of Gary Rambo, Deceased, and Christopher T. Dawidowski and Kimberly A. Dawidowski, Defendants/Respondents.

No. ED 79029.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 5, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 8, 2002.

Application for Transfer Denied
May 28, 2002.

Janet M. Adams, St. Louis, for Appellant.

Randall D. Sherman, Hillsboro, Sam P. Rynearson, David A. Feltz, Christina E. Dubis, Russell F. Watters, (Rambo), St. Louis, David T. Butsch, (Dawidowski), Clayton, for Respondents.

ROBERT G. DOWD, JR., Judge.

Plaintiffs Dianna Heffernan and her children, Steven and Keith, appeal from the trial court's grant of summary judgment to the defendants stemming from Plaintiffs' wrongful death suit. Although Plaintiffs raise several allegations of error as to the granting of summary judgment to each defendant, we find the undisputed facts negate an essential element in each of Plaintiffs' causes of action and all defendants are entitled to judgment as a matter of law. We accordingly affirm.

## Statement of Facts

At its heart, this case involves a fatal accident that occurred when Ray Heffernan, Gary Rambo, and Chris Dawidowski attempted to repair a broken sewer pipe, which was causing flooding in Mastodon Meadows subdivision where the three men lived. Initially, the three men used a bobcat to dig down between four and five feet, but failed to uncover the damaged sewer pipe. The men then used a backhoe to continue to dig, and ultimately dug a ditch approximately twelve feet deep and fifteen feet wide before uncovering the broken pipe. The men, however, did not shore the walls of the ditch. Eventually, the ditch walls caved in while the men were working in the hole. Both Ray Heffernan and Gary Rambo were killed as a result, and Chris Dawidowski was injured in the accident.

As a result of the accident, Plaintiffs filed a wrongful death suit against Fredrick Reinhold and Reinhold Development Corporation (collectively "Reinhold"), who installed the subdivision sewer lines and pipes, the Mastodon Meadows Homeowners Association ("MMHA"), the Estate of Gary Rambo ("Rambo"), Chris Dawidowski and his wife, Kimberly, (collectively "the Dawidowskis"), and Patrick and Jean-

ette Lindsey.[1] Plaintiffs then filed a motion for partial summary judgment against the defendants on the issue of liability. Each of the defendants also filed separate motions for summary judgment against Plaintiffs. The defendants' motions for summary judgment were granted as to each defendant on separate grounds and Plaintiffs' motion for partial summary judgment was denied. This appeal follows.

## Standard of Review

Appellate review of a trial court's grant of summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. One way a defending party may establish a right to judgment as a matter of law is by showing undisputed facts that negate any one of the elements of the plaintiff's cause of action. *Id.* at 381.

At the outset, we make several preliminary observations as to what we are and are not reviewing. First, the record on appeal is extensive, including Plaintiffs' sixteen-count petition, five separate answers from the defendants setting forth numerous affirmative defenses, Plaintiffs' motion for partial summary judgment and the responses thereto, the defendants' separate motions for summary judgment against Plaintiffs and the responses thereto, and the trial court's ruling regarding the summary judgment motions. For purposes of this appeal, however, we are confined to addressing only those issues properly raised in the defendants' motions for summary judgment and the responses thereto. *Mothershead v. Greenbriar*

*Country Club, Inc.,* 994 S.W.2d 80, 85 (Mo. App. E.D.1999). We, thus, may not consider any theories advanced in Plaintiffs' motion for partial summary judgment, as such motion was denied by the trial court and therefore not reviewable. *Jones v. Landmark Leasing, Ltd.,* 957 S.W.2d 369, 373 (Mo.App. E.D.1997). Further, we may not consider any theories advanced by the Plaintiffs for the first time on appeal, but only consider those properly before the trial court. *Country Mut. Ins. Co. v. Matney,* 25 S.W.3d 651, 654 (Mo.App. W.D. 2000).

With these limitations and our standard of review in mind, we find each defendant has set forth undisputed facts that negate an essential element of Plaintiffs' causes of action and summary judgment was therefore appropriate.

## Analysis

### Claims Against Reinhold

In their petition, Plaintiffs bring several claims against Reinhold, who installed the broken sewer pipe that the three men were attempting to repair at the time of the cave-in. According to Plaintiffs, Reinhold was (1) liable for breach of implied warranty of fitness for a particular purpose, essentially for defective installation of the original sewer pipe; (2) strictly liable for failure to warn of the dangerous condition of the defective pipe; and (3) liable for negligent design and installation of the sewer pipe. In his motion for summary judgment, as to the first count, Reinhold denied that breach of implied warranty of fitness for a particular purpose was applicable because this was not a transaction in goods between a buyer and a seller. As to the negligence and failure-to-warn counts, Reinhold asserted that if there was any negligence in the installa-

---

**1.** The Lindseys were dismissed from the case, and are not a party to this appeal.

tion of the pipes, his negligence was not the proximate cause of Ray Heffernan's death. Because we find Reinhold had set forth undisputed facts to negate an essential element of Plaintiffs' causes of action, we find summary judgment appropriate.

In order to establish a case for breach of implied warranty of fitness for a particular purpose, the plaintiff must establish a "seller" at the time of contracting has reason to know any particular purpose for which the "goods" are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. Section 400.2–315, RSMo 2000. If these elements are met, then there is an implied warranty that goods shall be fit for such purpose. *Id.*

■ After our review of the record, we find that the installation of the storm sewer pipe in this situation was not a "transaction in goods." Reinhold installed sewer pipes into Mastodon Meadows in the subdivision's development phase before Ray Heffernan owned his property in Mastodon Meadows. Thus, we are not persuaded that Ray Heffernan was a "buyer" for purposes of Section 400.2–315, RSMo 2000. Given that the sewer pipe installation was not a transaction in goods and Ray Heffernan wasn't a buyer, there was no implied warranty of fitness for a particular purpose. Therefore, summary judgment was properly granted to Reinhold on the warranty count.

■ With respect to Plaintiffs' negligence theory, in order to overcome summary judgment they must show: (1) the defendant owed a duty of care to the decedent; (2) the defendant breached that duty; (3) the breach was the cause in fact and the proximate cause of his death; and (4) as a result of the breach, the plaintiff suffered damages. *Finocchio v. Mahler,* 37 S.W.3d 300, 302 (Mo.App. E.D.2000). Further, in order to establish a claim for strict liability for failure to warn, the plaintiff must show the injuries were the direct and proximate result of the defendant's failure to warn. *Cole v. Goodyear Tire & Rubber Co.,* 967 S.W.2d 176, 183 (Mo.App. E.D.1998). We will address these causes of action together because both of them require proximate cause as an essential element.

■ In order to prove the causal connection necessary to establish negligence, the plaintiff must show both causation in fact and proximate cause. *Robinson v. Missouri State Highway and Transp. Com'n,* 24 S.W.3d 67, 77 (Mo.App. W.D.2000). A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred "but for" that conduct. *Id.* A plaintiff must also show that the defendant's conduct was also the proximate cause of the injuries. *Id.* Proximate cause is not causation in fact, but is a limitation the law imposes upon the right to recover for the consequences of a negligent act. *Id.* The requirement of proving proximate cause absolves those actors whom it would be unfair to punish because of the attenuated relation which their conduct bears to the plaintiff's injuries. *Id.* at 77–78. Thus, proximate cause requires something in addition to a "but for" causation test because the "but for" causation test serves only to exclude items that are not causal in fact; proximate cause will include "items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage." *Id.* at 78.

■ The test of proximate cause is whether the defendant's negligence is that cause or act of which the injury was the natural and probable consequence. *Williams v. Missouri Highway and Transp. Com'n,* 16 S.W.3d 605, 611 (Mo.

App. W.D.2000). Proximate cause, therefore, is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct. *Robinson,* 24 S.W.3d at 78.

 Further, it is important to note that if two or more persons are guilty of consecutive acts of negligence there is a question as to whether the initial act of negligence was a proximate cause of the injury or whether there was an efficient, intervening cause. *Simonian v. Gevers Heating & Air Conditioning, Inc.,* 957 S.W.2d 472, 475 (Mo.App. E.D.1997). An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury, but it may not consist of merely an act of concurring or contributing negligence. *Id.* Whether proximate cause exists is usually a jury question; however, a court properly interposes its judgment in this determination when the evidence reveals the existence of an intervening cause that eclipses the role the defendant's conduct played in the plaintiff's injury. *Id.*

 Here, the undisputed evidence shows that while Reinhold originally installed the damaged pipe, Plaintiffs cannot prove proximate cause to establish negligence. Based upon our review of the summary judgment record, we cannot conclude it reasonably foreseeable that three neighbors would undertake such a project without the proper safeguards needed to complete the job safely. The record shows that the excavation could have been done safely as conceded by Plaintiffs' own expert, Dr. Mario Gomez. After noting the potential reasons for the collapse, Dr. Gomez stated, however, that the excavation could have been done safely if the trench had been properly sloped or properly shored regardless of the nature of the soil conditions. "It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise due care for their own safety, in the absence of notice to the contrary." *Buck v. Union Elec. Co.,* 887 S.W.2d 430, 434–35 (Mo.App. E.D.1994). Here, Ray Heffernan failed to exercise due care for his own safety. Heffernan's conduct was a sufficient intervening cause.

Plaintiffs could not establish the causation element needed to succeed on their claims. The undisputed facts establish that Ray Heffernan's death was not a reasonable and probable consequence of Reinhold's conduct of installing the sewer pipe or Reinhold's failure to warn. Therefore, the trial court did not err in granting summary judgment to Reinhold.

*Claims Against MMHA*

 Plaintiffs also alleged in their petition that MMHA was negligent in failing to adequately safeguard and exercise control over the excavation of the sewer pipe, which was located on an easement within the control of MMHA. MMHA, however, argued in its motion for summary judgment that it owed no duty to Heffernan because the improperly shored twelve-feet deep and fifteen-feet wide hole was open and obvious, and Heffernan appreciated the dangerous condition prior to the collapse.

As stated above, Plaintiffs must establish the following elements in order to succeed on wrongful death claim on a theory of negligence: (1) the defendant owed a duty of care to the decedent; (2) the defendant breached that duty; (3) the breach was the cause in fact and the proximate cause of his death; and (4) as a result of the breach, the plaintiff suffered damages. *Finocchio,* 37 S.W.3d at 302. Because we

find that MMHA has set forth undisputed facts to negate the duty element of Plaintiffs' negligence claim, summary judgment was appropriately rendered.

Generally, an owner or occupier of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law. *Harris v. Niehaus,* 857 S.W.2d 222, 226 (Mo. banc 1993). Our Supreme Court in *Harris* adopted Restatement (Second) of Torts Sections 343 and 343A(1) (1965), which embody the standard of care a landowner owes to an invitee. Under *Harris,* if a condition on the property is so open and obvious that an invitee should reasonably be expected to discover it and realize the danger, a possessor of land does not breach the standard of care owed to invitees unless the possessor should anticipate the harm despite such knowledge or obviousness. *Id.* at 226. Failure, therefore, to protect invitees against conditions that are open and obvious as a matter of law does not fall below the applicable standard of care. *Id.* A possessor of land is not an absolute insurer of the well-being of its invitees. *Id.*

The pivotal question, therefore, is whether a twelve-foot deep and fifteen-foot wide ditch is an open and obvious condition as a matter of law and, thus, relieves MMHA from its duty to protect Ray Heffernan or whether MMHA should have expected that Ray Heffernan would not appreciate the danger thus posed. Here, we find both that the ditch was an open and obvious condition, and that Ray Heffernan appreciated the harm.

As to whether the ditch was an open and obvious condition, Ray Heffernan was closely involved in creating the twelve-foot deep and fifteen-foot wide ditch on the land. Ray Heffernan was aware of the enormous nature of the job by the bids he received. Ray Heffernan knew that heavy equipment, such as the bobcat and the backhoe, was necessary. The trench was apparent to all those present at the scene of the excavation. Under these undisputed facts, we must conclude that the twelve-foot deep and fifteen-foot wide ditch was an open and obvious condition on the land. *See Kenward v. Hultz,* 371 S.W.2d 344, 350–51 (Mo.App.1963) (finding a ditch that was two and half- to three-feet wide, seven-feet deep, and approximately sixty- to seventy-feet long an open and obvious condition). Further, the undisputed evidence indicated that Ray Heffernan appreciated the danger posed by the open and obvious condition of the trench. In fact, Patrick Lindsey testified during his deposition that shortly before the collapse of the trench, Ray Heffernan, while getting back into the trench, said, "This is crazy. This looks dangerous." Such statements indicate that Ray Heffernan realized the danger posed by the trench.

Based upon such facts, we cannot conclude that the trial court erred in granting summary judgment to MMHA. MMHA did not fail to protect Ray Heffernan given that not only was the condition open and obvious, but Ray Heffernan himself appreciated the danger involved.

*Claims Against the Dawidowskis*

Plaintiffs further alleged in their petition that the Dawidowskis, as property owners, were (1) liable for a hazardous condition to invitees, (2) strictly liable to a guest, (3) liable for negligence to invitees for negligent excavation and failure to make safe, and (4) liable for negligence to guests for negligent excavation and failure to make safe. The Dawidowskis, however, counter in their motion for summary judgment that they, as the owner of the servient tenement, were under no duty to maintain, repair, or warn of dangerous conditions on an easement under the control of the easement owner.

Each of the counts brought by Plaintiffs against the Dawidowskis is premised on landowner liability and the duty owed to an invitee or guest. The undisputed facts show that the trench was dug on the sewer easement, which was under the control of MMHA. In the absence of an agreement to the contrary, an easement owner is responsible for keeping the property in repair and is liable for any injury resulting from the failure to repair. *Kibbons v. Union Elec. Co.*, 823 S.W.2d 485, 488 (Mo. banc 1992). In other words, a landowner has no duty to maintain or repair, or to warn or barricade dangerous conditions on the easement that are in the sole control of the holder of the easement. *Id.* This is because the landowner is liable only for those injuries caused by devices placed on the premises by the easement holder that are under the landowner's possession and control. *Id.* There is no duty even where the landowner has knowledge of the potentially harmful condition. *Id.*

Accordingly, under the Indenture of Covenants and Restrictions under which MMHA operates, MMHA had an exclusive easement over all the storm sewers within Mastodon Meadows in order to maintain and repair the sewers. As an easement holder, MMHA is responsible for the broken sewer pipe. Further, because we find no contrary agreement between MMHA and the Dawidowskis for the Dawidowskis to maintain or make repairs on the easement, we cannot hold the Dawidowskis responsible for Ray Heffernan's death. The Dawidowskis held only a servient estate and thus had no duty to warn or protect Ray Heffernan against conditions controlled by MMHA, the owner of the easement. Although Chris Dawidowski participated in the excavation, at Ray Heffernan's request, this did not create a duty to warn or protect Ray Heffernan that would supercede MMHA's duty as the easement holder. Thus, the trial court did

not err in granting summary judgment to the Dawidowskis.

*Claims Against Rambo*

Plaintiffs further alleged Rambo was negligent in failing to warn Ray Heffernan of the dangerous condition or make the excavation site safe for Heffernan. Rambo, however, asserted in his summary judgment motion that he owed no duty to Ray Heffernan for open and obvious risks.

With respect to the issue of Rambo's duty to warn or make the premises safe, we find the *Kenward* case factually analogous and instructive. In *Kenward*, the plaintiff and defendant were brothers-in-law who often helped each other with repair projects without receiving pay. *Kenward*, 371 S.W.2d at 346. The plaintiff was helping the defendant dig a large trench on the defendant's property. The two men dug a hole two and half- to three-feet wide, seven-feet deep and approximately sixty- to seventy-feet long, without shoring or bracing the walls. *Id.* The trench collapsed, injuring the plaintiff. *Id.* On appeal, the court affirmed the trial court's grant of defendant's motion to set aside the verdict concluding that the plaintiff failed to make a submissible case because he had not established defendant's breach of a legal duty. *Id.* at 351. Specifically, the court stated:

There is nothing in the record to show that when plaintiff came upon defendant's premise and started to dig in the trench that there was any condition present involving an unreasonable risk to his safety or that constituted a hidden danger, trap, snare or pitfall. The condition of the trench and any risk incident to digging therein were as apparent and obvious to plaintiff as to defendant. .... By the use of his senses plaintiff could know and appreciate any existing danger to the same extent as could de-

fendant, with whom he stood in at least equal position to protect himself, unless, for some reason disclosed by the evidence, defendant had superior knowledge of the risks involved in the work—in particular, the likelihood of the trench wall collapsing.

*Id.* at 350–51.

We have already determined as a matter of law that the trench was an open and obvious condition on the land. Ray Heffernan, like the plaintiff in *Kenward,* could appreciate the existing danger in the trench to the same extent as Rambo. In fact, the record clearly indicates Ray Heffernan was aware of the danger posed by the trench, as evinced by the undisputed fact that he stated, "This is crazy. This looks dangerous." Moreover, it can be said with equal certainty that Rambo did not appreciate the danger of the trench based on the fact that he died in the collapse along with Ray Heffernan. Given Rambo's resulting death from the accident, how can we say Rambo had superior knowledge of the danger involved at the excavation site? Nor does the fact that Rambo had seen previous excavations completed by Reinhold establish that he had superior knowledge of properly digging ditches. Instead, the undisputed facts indicate that Rambo owed Ray Heffernan no duty. Therefore, the trial court did not err in granting summary judgment to Rambo.

### Conclusion

Because there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law, the judgment of the trial court is affirmed.

CRANDALL, P.J., concurs in part and dissents in part in separate opinion.

CRANE, J., concurs.

WILLIAM H. CRANDALL, JR., Presiding Judge, concurring in part and dissenting in part.

I concur in the majority opinion, which affirms summary judgment in favor of Reinhold and the Dawidowskis. I am unable to join in the majority opinion regarding Mastodon Meadows Homeowners Association, and Rambo.

The majority states that the pivotal question is whether a twelve-foot deep and fifteen-foot wide ditch is an open and obvious condition as a matter of law. I believe, however, that we need to narrow the inquiry. Certainly the size of the ditch was open and obvious, but that was not the danger. The dangerous condition, herein, was the propensity for the ditch to collapse without proper shoring. I believe that whether that condition was open and obvious is a question of fact for the jury, thus precluding summary judgment.

As to Ray Heffernan's statement, "This is crazy. This looks dangerous," I cannot conclude, as a matter of law that means that he realized the danger of a *collapse.* It is more reasonable to conclude that Heffernan would not have gone in the ditch if he thought it would collapse. I believe, at the very least, Heffernan's appreciation of the specific danger in question is a jury question.

As to Rambo, whether he had superior knowledge and thus owed a duty to Heffernan is, I believe, a jury question.

For the reasons stated, I concur in part and dissent in part.