# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-2304/2392

_____

Lamoni K. Riordan,          *
                                        *

       Appellee/Cross Appellant,      *

                                        *    Appeals from the United States

       v.                               *    District Court for the Western

                                        *    District of Missouri.

Corporation of the Presiding Bishop   *

of The Church of Jesus Christ of     *

Latter-Day Saints, doing business as   *

The Church of Jesus Christ of        *

Latter-Day Saints,                 *

                                        *

       Appellant/Cross Appellee.       *

_____

Submitted: March 16, 2005
Filed: August 5, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

A jury awarded Lamoni Riordan (Lamoni) over $1.18 million in damages on his claims against the Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints (CPB) for injuries Lamoni sustained when his father, Ken Riordan (Ken), a CPB employee, was operating a riding lawnmower in reverse and backed over Lamoni's foot. CPB appeals, arguing Ken's parental immunity shielded

CPB from liability, and the district court[1] erroneously submitted both a *respondeat superior* and a direct negligence claim to the jury.  Lamoni appeals the district court's denial of his motion for a new trial on damages.  We affirm *in toto*.

## I.    BACKGROUND

On April 13, 1985, five-year-old Lamoni was injured in an accident involving a riding lawnmower operated by Ken while Ken was mowing at a CPB-owned facility.  Because of the accident, Lamoni's foot was partially amputated.  Lamoni filed suit against CPB on February 15, 2002, in Missouri state court, claiming (1) CPB was liable for Ken's negligence under the doctrine of *respondeat superior*, (2) CPB negligently maintained the lawnmower, and (3) CPB negligently failed to train and supervise its employees properly.  CPB removed the case to the federal district court.

The district court denied CPB's motion for summary judgment on CPB's argument that the *respondeat superior* claim was barred by parental immunity.  The court granted CPB's motion on the negligent maintenance claim.  CPB moved in limine to exclude at trial all evidence regarding CPB's failure to maintain the lawnmower and to prevent Lamoni from asserting claims at trial other than the *respondeat superior* claim.  The district court granted the motion as to evidence regarding the failure to maintain the lawnmower.  The court denied the motion as to Lamoni's direct negligence claim based on negligent supervision.  Thus, the district court concluded Lamoni could bring both the *respondeat superior* and direct negligence claims at trial.

Before trial, Lamoni's counsel sent a letter to Lamoni and sent a copy to Ken.  The letter explained what Lamoni would have to prove to prevail on his claims

---

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

against CPB, explained the district court's rulings in limine, instructed Lamoni and Ken that certain evidentiary matters were off limits to all witnesses, and included a list of Lamoni's allegations of fault against Ken and thereby CPB. At trial, Lamoni presented evidence about past surgeries on his foot, as well as potential future surgeries, such as a below-the-knee amputation, after which Lamoni would use energy-storing prosthetics. Following the trial, the jury found for Lamoni on the *respondeat superior* and direct negligence claims, awarding $80,651.73 for past medical expenses, $682,976.18 for future medical expenses, $420,000.00 for past non-economic damages, and "none" for future non-economic damages, for a total of $1,183,627.91.

Lamoni moved for a new trial on damages, arguing the verdict of "none" for future non-economic damages was contrary to law and against the weight of evidence. The district court denied the motion, concluding Lamoni did not preserve the error and, thus, waived objection to the allegedly inconsistent verdict. The court also ruled that, even if Lamoni had not waived the objection, he was not entitled to a new trial, because the jury simply may not have believed Lamoni's claims that he would have future non-economic damages. The court also concluded the total damages award fairly and reasonably compensated Lamoni for his injuries.

CPB appeals, arguing *respondeat superior* liability is purely derivative, i.e., because Ken cannot be liable to Lamoni due to parental immunity, CPB cannot be liable either. CPB also argues the direct negligence claim fails due to parental immunity. Further, CPB claims Ken's self-admitted negligence was an intervening cause of the injury, breaking the causal chain. In his cross-appeal, Lamoni contends the district court erred in denying the motion for a new trial, because there was evidence of future pain and suffering.

## II. DISCUSSION

Exercising diversity jurisdiction, we interpret Missouri law. Ehlis v. Shire Richwood, Inc., 367 F.3d 1013, 1016 (8th Cir. 2004). We review the district court's interpretation of Missouri law de novo, attempting to forecast how the Missouri Supreme Court would decide the issues presented. Id. We also review the grant of summary judgment de novo. Gray v. AT&T Corp., 357 F.3d 763, 765 (8th Cir. 2004).

### A. *Respondeat Superior* Claim

CPB argues *respondeat superior* liability is purely derivative, so Ken's parental immunity shields CPB from liability. Thus, CPB claims the district court erred in submitting Lamoni's *respondeat superior* claim to the jury. CPB also contends applying parental immunity to bar Lamoni's claims is necessary to prevent collusion between Lamoni and Ken.

Although the Missouri Supreme Court has abrogated parental immunity, the doctrine still applies to causes of action accrued before December 19, 1991. See Hartman v. Hartman, 821 S.W.2d 852, 858 (Mo. 1991); Campbell v. Callow, 876 S.W.2d 25, 27 (Mo. Ct. App. 1994). The parties stipulated "[p]arental immunity applies to this case and, therefore, Plaintiff's parents, Kenneth and Pearl Riordan, cannot be joined as parties to this action." We find no reason to disagree. Thus, we examine whether Ken's parental immunity shields CPB from liability.

The Missouri Supreme Court has recognized the close and analogous connection between parental immunity and spousal immunity. Hartman, 821 S.W.2d at 855. Missouri adopted parental immunity on "the belief that allowing children to sue their parents would disturb the unity and harmony of the family." Id. at 854 n.1. Spousal immunity also had underpinnings in notions of family unity and harmony. See Townsend v. Townsend, 708 S.W.2d 646, 648-50 (Mo. 1986). In the absence of

authority on the applicability of parental immunity in situations like that presented here, it is appropriate for us to consider Missouri courts' rulings on spousal immunity.

In Mullally v. Langenberg Brothers Grain Co., 98 S.W.2d 645, 645 (Mo. 1936), the defendant contended, because a wife could not maintain an action against her husband for damages arising from injuries caused by the husband's negligence, the husband's employer enjoyed that derivative immunity against the wife's *respondeat superior* claim against the employer. After noting two lines of authority on this question, the Missouri Supreme Court concluded "legal principle and public policy [dictate] the wife has a right of action against the husband's employer." Id. at 646.[2] The court quoted extensively from the reasoning in Schubert v. August Schubert Wagon Co., 164 N.E. 42 (N.Y. 1928): "The disability of wife or husband to maintain an action against the other for injuries to the person is not a disability to maintain a like action against the other's principal or master." Mullally, 98 S.W.2d at 646 (quoting Schubert, 164 N.E. at 42). "The statement sometimes made that it is derivative and secondary . . . means this, and nothing more: That at times the fault of the actor will fix the quality of the act. Illegality established, liability ensues." Id. (quoting Schubert, 164 N.E. at 43). The New York court explained why defendants attempt to hide behind the husband's immunity: "The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity." Id. (quoting Schubert, 164 N.E. at 43). The court reasoned, "A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act, though the

---

[2]Although CPB argues these citations to Mullally are dictum, we may still consider the Missouri Supreme Court's language: "If the Missouri Supreme Court has not yet addressed a particular issue, 'we may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'" Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005) (citation omitted).

law exempts the husband from liability for the damage. Others may not hide behind the skirts of his immunity." Id. (quoting Schubert, 164 N.E. at 43).

According to the Restatement (Second) of Agency, in an action against a principal based on an agent's conduct during the course of the agent's employment, "[t]he principal has no defense because of the fact that . . . the agent had an immunity from civil liability as to the act." Restatement (Second) of Agency § 217 (1958). These immunities include those "resulting from the relation of parent and child and of husband and wife." Id. cmt. b. Moreover, "[s]ince the Restatement, . . . the trend has been strongly to enforce the liability of the [employer]." Id. Reporter's Note.

Other jurisdictions have rejected the argument that parental immunity bars a suit by a child against a parent's employer based on the parent's negligence during the scope of employment. Particularly instructive to our discussion is Hooper v. Clements Food Co., 694 P.2d 943 (Okla. 1985). In Hooper, a minor child's mother brought suit against the employer of the child's father, seeking damages for injuries the child suffered due to the father's negligence while acting in the course and scope of employment. Id. at 944. The court noted the employer's "liability for the child's injuries was predicated upon principles of respondeat superior," and "[t]he fact that the injuries of the child proximately resulted from the negligence of [the] employee while engaged in the course and scope of employment was never in dispute." Id. The employer argued its liability to the child was derivative; thus, "its employee's parental immunity precluded any recovery against it by the child." Id. The employer essentially "argued that inasmuch as recovery is personally precluded against the negligent employee, recovery must also be precluded against the employer." Id. The trial court granted Clements's motion for summary judgment, concluding the doctrine of parental immunity shielded the employer from liability to the child. Id.

The Oklahoma Supreme Court reversed, ruling the parental immunity exception to tort liability was inapplicable to the facts of the case. Id. Noting courts

generally hold an employer liable for the torts of its employee that occur during the course and scope of employment, even when the employee is personally immune from suit, the court adopted the majority view "that the immunity of a parent is a personal immunity, and it does not, therefore, protect a third party who is liable for the tort." Id. at 944-45. The court declared a "child may fully recover damages from the employer of the child's parent when the parent's negligence, proximately causing the injury to the child, occurred in the course and scope of the parent's employment." Id. Similarly, in Mi-Lady Cleaners v. McDaniel, 179 So. 908, 911 (Ala. 1938), the Alabama Supreme Court opined, "The law imputes to the [employer] the act of the [employee], and if the act is negligent or wrongful proximately resulting in injury to a third person, the negligence or wrongful conduct is the negligence or wrongful conduct of the [employer] for which he is liable, and this rule of liability is not qualified by any special immunity resulting from the domestic relation existing between the person injured and the [employee] who committed the negligent or wrongful act." See also Felderhoff v. Felderhoff, 473 S.W.2d 928, 933 (Tex. 1971); Wright v. Wright, 50 S.E.2d 540, 543-44 (N.C. 1948); O'Connor v. Benson Coal Co., 16 N.E.2d 636, 636 (Mass. 1938); Chase v. New Haven Waste Material Corp., 150 A. 107, 108 (Conn. 1930).

We believe the Missouri Supreme Court, if confronted with this appeal, would conclude parental immunity does not bar Lamoni's *respondeat superior* claim against CPB. As noted in Hartman, the court had been engaged in a "piecemeal abrogation of [parental] immunity" since 1953, culminating in its complete abrogation in 1991. Hartman, 821 S.W.2d at 854, 855-56. We forecast the Missouri Supreme Court would adopt the majority view–"the holding that the immunity of a parent is a personal immunity, and it does not, therefore, protect a third party who is liable for the tort." Hooper, 694 P.2d at 944-45. Accordingly, the district court did not err in so holding.

CPB also argues application of the parental immunity doctrine is necessary to protect it from collusion between Ken and Lamoni. Claiming the evidence of collusion here is "overwhelming," CPB points to the letter from Lamoni's counsel to Lamoni, copied to Ken, before the trial. CPB asserts the Missouri Supreme Court, in Hartman, recognized "the danger of fraud and collusion between parent and child" as a justification for the parental immunity doctrine. Notwithstanding CPB's litigation position, the Missouri Supreme Court recognized no such justification, instead explaining "[o]ther jurisdictions have considered additional reasons for adoption of the parental immunity doctrine: . . . the danger of fraud and collusion between parent and child"; however, Missouri premised its rule adoption on the belief that such suits would "disturb the unity and harmony of the family." Hartman, 821 S.W.2d at 854 n.1.

In any event, our review of the record does not convince us collusion occurred. Although the letter sent to Ken may have contained information the disclosure of which reflected poor judgment by Lamoni's counsel, the letter only set forth what Lamoni needed to prove to prevail against CPB, explained the district court's rulings in limine, informed Lamoni and Ken of certain inadmissible evidence, and attached a list of Lamoni's allegations of fault against CPB. Ken's account of the accident did not change based on the letter. Witnesses testified at trial Ken blamed himself for the accident from the moment it occurred, admitted the injury was his fault, and stated he did not realize Lamoni was behind him as he mowed. In his deposition, Ken acknowledged mowing in reverse was more dangerous. During trial, Ken recounted the events surrounding the accident. Although Ken did not state he blamed himself, his testimony clearly demonstrates he accepted the blame for the accident, again acknowledging the danger involved in mowing in reverse. Ken also admitted reading the letter before taking the stand. We agree with the district court "nothing in this letter [was] designed to any way influence the testimony of this witness." Furthermore, the letter was admitted into evidence at trial, and CPB had the opportunity to impeach Ken and to argue collusion to the jury. Thus, whatever

collusion CPB claims occurred certainly was insufficient to warrant application of the now-abrogated parental immunity doctrine to bar Lamoni's *respondeat superior* claim against CPB.

## B.     Direct Negligence Claim

CPB argues the court erred in submitting to the jury Lamoni's direct negligence claim based on negligent supervision. CPB contends this claim is inextricably intertwined with the *respondeat superior* claim and is barred by parental immunity, and CPB claims Ken's own negligence was an intervening cause of the injury.

"The majority view is that once an employer has admitted *respondeat superior* liability for [] negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." McHaffie v. Bunch, 891 S.W.2d 822, 826 (Mo. 1995). The rationale behind this view is that, "where the imputation of negligence is admitted, the evidence laboriously submitted to establish other theories serves no real purpose." Id. Assuming without deciding that once course and scope of employment is admitted, a plaintiff must rely on *respondeat superior* liability, we conclude CPB's argument fails. CPB did not admit Ken was acting within the course and scope of his employment, alternatively contending Ken was acting as a parent in babysitting Lamoni at the time of the injury. In fact, CPB denied Ken was acting within the course and scope of employment up to and through closing argument. Further, as explained above, parental immunity does not shield CPB from liability.

In support of its contention Ken's own negligence was an efficient, intervening cause, CPB cites Heffernan v. Reinhold, 73 S.W.3d 659, 664 (Mo. Ct. App. 2002), and Esmond v. Bituminous Casualty Corp., 23 S.W.3d 748, 753 (Mo. Ct. App. 2000). In Heffernan, the court opined that the existence of proximate cause is normally a jury question, but the court may decide the issue when the evidence reveals "an intervening cause that eclipses the role the defendant's conduct played in the

plaintiff's injury." <u>Heffernan</u>, 73 S.W.3d at 665. "An efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury[.]" <u>Id.</u> "An intervening cause will not preclude liability if it 'is itself a foreseeable and natural product of the original negligence.'" <u>Esmond</u>, 23 S.W.3d at 753 (citation omitted). But a plaintiff may not recover if the defendant's negligence "did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, and there intervened between that cause and the injury a distinct, successive, unrelated and efficient cause of the injury, though the injury would not have occurred but for the condition or occasion." <u>Id.</u> (citation omitted). Liability still exists if the alleged intervening cause is "merely an act of concurring or contributing negligence." <u>Heffernan</u>, 73 S.W.3d at 665.

In this case, Ken's negligence resulted from CPB's negligent failure to train or supervise him properly. CPB's failure to train and supervise Ken properly caused Ken to operate the mower negligently. Thus, Ken's negligence cannot be considered an intervening cause of the injury. The jury verdict establishes not only the negligence and causation, but the foreseeability of the failure to train and supervise leading directly to the injury. <u>See</u>, <u>e.g.</u>, <u>Ponticas v. K.M.S. Invs.</u>, 331 N.W.2d 907, 915-16 (Minn. 1983). The district court did not err in submitting both claims to the jury.

### C.     Future Damages

In his cross-appeal, Lamoni argues the district court should have granted a new trial on damages, because the evidence supports an award of future non-economic damages for pain and suffering. Under Missouri law, "a new trial should be granted on the ground that a verdict is inadequate only if the verdict is against the weight of the evidence." <u>Johnson v. Cowell Steel Structures, Inc.</u>, 991 F.2d 474, 477 (8th Cir. 1993). "When the trial court has overruled a motion for new trial alleging inadequacy of damages . . . , the jury's exercise of its discretion is conclusive unless the verdict

is so shockingly inadequate as to indicate that it is the result of passion and prejudice or a gross abuse of discretion." Id. (quoting Havel v. Diebler, 836 S.W.2d 501, 504 (Mo. Ct. App. 1992)). Moreover, "[a]bsent proof that the verdict was 'shockingly inadequate,' we will not disturb the trial court's decision to deny the motion for new trial." Id. We have declared, "When 'the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal.'" Jones v. Swanson, 341 F.3d 723, 732 (8th Cir. 2003) (citation omitted); see Root v. Manley, 91 S.W.3d 144, 146 (Mo. Ct. App. 2002) (stating "[t]he jury's broad discretion in the awarding of damages is conclusive on appeal, especially when the verdict has been approved by the trial court in an order overruling a motion for new trial"); Deck v. Kovac, 864 S.W.2d 423, 425 (Mo. Ct. App. 1993) (stating trial court's approval of jury verdict is "virtually conclusive"). Finally, "a jury is free to accept or reject all or a part of a party's evidence on damages." Ellison v. Ivaska, 946 S.W.2d 813, 815 (Mo. Ct. App. 1997).

In Root, 91 S.W.3d at 146-47, the Missouri Court of Appeals upheld a denial of a new trial motion after the jury awarded medical expenses to the plaintiffs, awarded minimal pain and suffering damages to one plaintiff, and denied the same to the other three plaintiffs. The court noted Davidson v. Schneider, 349 S.W.2d 908, 913 (Mo. 1961), wherein the Missouri Supreme Court *affirmed* the denial of a motion for new trial, but nevertheless stated the generally accepted view that awards of medical expense only, without an award for pain and suffering, are invalid and are "set aside almost as a matter of course." See Root, 91 S.W.3d at 146. Although all four plaintiffs had presented evidence of their medical expenses and pain and suffering, the Root court concluded the jury simply could have disbelieved the evidence on some of the plaintiffs' claims for pain and suffering. Id. Thus, the court determined the trial court had not abused its discretion in denying a new trial. Id.

In the present case, although Lamoni argues it is undisputed he will have future pain and suffering, the jury could have believed the trans-tibial surgery he may have

in the future (for which he received future medical expenses) and the prosthetics he sought would alleviate any pain or suffering. Or the jury could have believed Lamoni simply would have no future pain and suffering with modern medications and the proposed surgery and prosthetics. The jury also may have concluded Lamoni's proposed surgeries were not medically necessary. The verdict form, to which Lamoni did not object, instructed the jury to write down a dollar amount, or the word, "none," if it found Lamoni would have no future pain and suffering.

Furthermore, Lamoni has not shown the jury's $1.18 million verdict, which incorporated no recovery for future pain and suffering, was "shockingly inadequate," "the result of passion and prejudice," or "against the weight of the evidence." Just as in <u>Root</u> and <u>Davidson</u>, "the jury may have found 'from the conflicting evidence that the [plaintiff's] complaints were all subjective' and in the end awarded [him his] 'actually established financial losses.'" <u>Root</u>, 91 S.W.3d at 147 (quoting <u>Davidson</u>, 349 S.W.2d at 913). "The ultimate test for a jury verdict is what fairly and reasonably compensates the plaintiff for the injuries sustained." <u>Id.</u> at 146. Because the district court did not abuse its broad discretion in denying the new trial motion, a decision that is virtually conclusive and unassailable on appeal, and because we conclude the $1.18 million verdict fairly and reasonably compensates Lamoni for his injuries, we reject Lamoni's argument that the district court erred in denying his motion for a new trial.

III.  CONCLUSION

We affirm in all respects.

_____