Paula J. and John E. LARISON,
Appellants,

v.

PUBLIC WATER SUPPLY DISTRICT
# 1 OF ANDREW COUNTY,
Respondent.

No. WD 56421.

Missouri Court of Appeals,
Western District.

Aug. 17, 1999.

Randall Bauman, St. Joseph, for appellant.

Mark D. Katz, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge HAROLD L. LOWENSTEIN, and Judge ALBERT A. RIEDERER.

LAURA DENVIR STITH, Presiding Judge.

Appellants Paula and John Larison appeal the judgment of the trial court sustaining the motion of the Respondent, Public Water Supply District # 1 of Andrew County, Missouri ("Water District"), for summary judgment in the Larisons' personal injury action. The Larisons assert their claims against the Water District fall within the "dangerous condition" exception to sovereign immunity, and that a genuine issue of material fact exists as to whether a negligent act or omission of the Water District created a dangerous condition which injured Mrs. Larison, and that a genuine issue of material fact exists as to whether the Water District had actual or constructive knowledge of the dangerous condition which resulted in Mrs. Larison's injury. The Larisons further argue that the trial court erred in dismissing their alternative claim of liability against the Water District based on a theory of *res ipsa loquitur*. We agree that sovereign immunity has been waived as to the allegations of a dangerous condition and that the court erred in granting summary judgment on the Larisons' claim of negligence by the water operator, but we affirm the grant of summary judgment on their claim that the Water District knew or should have known of the dangerous condition, and on their *res ipsa loquitur* claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Larisons moved into the home at which the accident occurred in September 1997. At this time, the water meter in question was already in place in the home's back yard. The water meter is approximately twelve inches in diameter and has a well thirty-eight inches deep. It has a heavy cast iron lid to cover the well. The lid has three small prongs on its underside that extend downward. They are designed to fit into and sit on top of a ring which goes around the outer diameter of the well. The ring is buried a few inches below ground level, so that, when the lid's prongs are properly in place, they slide under the ring and the top of the lid sits level with the ground. This usually enables people to walk or mow over the lid without displacing it more than one eighth of one

inch. If the lid is not properly seated, however, then the prongs will not be properly in place, and the lid could slide further when someone stepped on it.

In order for an operator to read the meter, he or she must remove the lid from the water meter well. On September 18, 1997, an operator read the Larisons' meter. The operator does not remember the details surrounding the reading of their meter on this particular date, as he reads approximately 750 water meters each month. The operator states, however, that he follows a set routine in reading every meter. Pursuant to that routine, he removes a meter lid with pliers, reads the meter, replaces the lid over the meter, watching to make sure the three prongs on the cover go inside the well, and then looks at the cover to make sure there are no gaps or raised areas. He then steps on top of the meter lid to ensure it is properly and securely in place over the well. Only then does he proceed to the next meter.

On September 27, 1997, nine days after the operator read the Larisons' meter, Mrs. Larison mowed the lawn surrounding her home. While she was mowing around some bushes, she took a few steps backwards and stepped onto the meter lid. The lid slid off of the meter well and caused her to fall. As she fell, her leg "plunged" into the water meter well. Mrs. Larison sustained serious injuries to her left leg and vaginal area as a result of the fall. The following day, the operator was informed of Mrs. Larison's fall. He returned to the Larisons' home to inspect the water meter. At the time of the inspection, the lid was properly and securely in place, and there was no damage to the lid or to the ring on which the lid was secured.

On January 23, 1998, the Larisons filed a petition against the Water District asserting the following four counts: (1) the Water District was negligent in either failing to properly secure the water meter lid, or in failing to provide a proper securing device for the water meter lid; (2) the Water District knew, or by using ordinary care should have known, that the water meter lid was placed in such a manner as to create a dangerous condition, and should have taken measures to remedy or warn of the dangerous condition; (3) the Water District was responsible for Mr. Larison's loss of consortium claims; and (4) the Water District was alternatively liable under the doctrine of *res ipsa loquitur*. The Water District filed a motion for summary judgment on the grounds that: (1) it is a public entity entitled to sovereign immunity from tort claims; (2) the Larisons' claims do not fall within the statutory exception to sovereign immunity, because they are unable to demonstrate that their damages were caused by a dangerous condition on the District's property, that a negligent act or omission of a District employee created a dangerous condition, or that the District knew of a dangerous condition prior to Mrs. Larison's fall; and (3) the facts do not permit a theory of *res ipsa loquitur*. On September 18, 1998, the trial court granted summary judgment in favor of the Water District on all claims. The Larisons appeal.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and affidavits reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *ITT Commercial Fin. Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 380 (Mo. banc 1993). Once the movant has demonstrated that no genuine issue of material fact exists, the burden shifts to the non-movant to show that there is a genuine dispute as to the material facts supporting the movant's right to summary judgment. *Id.* at 381–82. A genuine issue exists if there is a dispute that is real, not merely argumentative, imaginary or frivolous. *Id.* at 382. Mere speculation and conjecture are not enough to create a genuine issue. *Id.* at 378.

"The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law." *Bonds v. Missouri Dep't of Mental Health,* 887 S.W.2d 418, 421 (Mo.App. 1994). We review the record in the light most favorable to the party against whom summary judgment was entered, and will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376.

## II. LEGAL ANALYSIS

### A. Exception to Sovereign Immunity for Dangerous Conditions

■ In the Larisons' first and third points on appeal, they allege the trial court erred in granting the Water District's motion for summary judgment because, they assert, there was sufficient evidence that a genuine issue of material fact existed as to whether their personal injury and loss of consortium claims fell within the statutory waiver of sovereign immunity contained in Section 537.600.

■ The Water District, as a political corporation of the State, is considered a public entity. §§ 247.020, 537.600 RSMo 1994. A public entity is generally immune from tort liability under sovereign immunity. *See, e.g., Page v. Metropolitan St. Louis Sewer Dist.,* 377 S.W.2d 348, 352–53 (Mo.1964). Section 537.600, however, expressly waives sovereign immunity for negligent acts or omissions in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in [a] *dangerous condition* at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind

of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

§ 537.600 RSMo 1994 (emphasis added). The parties disagree as to whether the court was correct in finding the dangerous condition exception did not apply here.

Under the statute, to fall within the dangerous condition exception to sovereign immunity, a plaintiff must allege: (1) a dangerous condition of a public entity's property at the time of injury; (2) that the injury directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind that the plaintiff incurred; and (4) that either (a) a public employee's negligence or wrongful act or omission within the course of his employment created the dangerous condition, or (b) the public entity had actual or constructive knowledge of the dangerous condition. § 537.600.1(2); *State v. Godfrey,* 883 S.W.2d 550, 552 (Mo.App.1994); *Warren v. State,* 939 S.W.2d 950, 955 (Mo.App. 1997).

### B. Evidence of Dangerous Condition

In its motion for summary judgment, the Water District alleged the Larisons' claims of negligence were based on mere speculation because they were unable to produce enough evidence to establish that the Water District's property was in a dangerous condition, that either a negligent or wrongful act or omission of an employee created a dangerous condition, or that the Water District had actual or constructive knowledge of a dangerous condition that caused Mrs. Larison's injuries. Specifically, the Water District asserted that there was no direct evidence of the water operator's negligence, and that,

given the lapse in time between the operator's reading of the meter and the injury, as well as the fact the meter was in the Larisons' unfenced back yard and so open to tampering from neighbors or children, there were many other possible causes of the condition of the water meter lid which injured Mrs. Larison.

We disagree that the evidence was insufficient to show an allegedly dangerous condition caused by operator negligence. Although the record is devoid of direct proof of the cause of the water lid becoming displaced, a plaintiff is not required to prove all elements of negligence by direct evidence. The elements of negligence may be shown by circumstances from which they may be inferred. *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 900 (Mo.App.1996); *Oldaker v. Peters,* 869 S.W.2d 94, 100 (Mo.App.1993). And, if the record contains competent evidence that two plausible, but contradictory accounts of essential facts exist, then a genuine issue of material fact remains to be resolved, because fair minded people, exercising reasonable judgment could reach different conclusions on the issue in controversy. *Bickerton, Inc. v. American States Ins. Co.,* 898 S.W.2d 595, 600 (Mo. App.1995); *Nieberg v. Marshall,* 865 S.W.2d 409, 410 (Mo.App.1993).

The Larisons assert that, here, there are basically two plausible accounts of essential facts giving rise to Mrs. Larison's injury. In support, they cite the deposition testimony of the water operator, William Carpenter, that: (1) he has a "routine" that he follows when he reads water meters, but he does not specifically remember reading the Larisons' meter or specifically recall following his routine at their home on September 18, 1997; (2) he was not aware of anyone in the public tampering with water meters in general; and (3) he was aware of only two possible causes of a water meter lid not being properly seated on top of the meter—(i) one of the prongs not properly placed within the water meter ring, or (ii) some foreign object came be-tween the water meter lid and the ring, preventing a secure seal.

The Larisons further note there were only nine days between the water operator's last visit to the Larisons' yard and the date of Mrs. Larison's injury, that the Larisons live in a low traffic area, and that there is no evidence of anyone else removing or tampering with the water meter cover since the date of the operator's last visit to the Larisons' yard. Thus, they argue, a question of fact exists because these circumstances would permit a reasonable jury to make either of two inferences: (1) Mr. Carpenter, as an employee of the Water District, negligently replaced the cover so that it was not securely in place when Mrs. Larison mowed her lawn (either because he did not seat the lid with the prongs or an object prevented a secure fit), or (2) someone or something else tampered with the water meter lid after Mr. Carpenter read the meter.

The Water District asserts that the evidence does not support the first inference, because Mr. Carpenter testified under oath that he has a specific routine that he always follows when reading water meters. As the Larisons correctly point out, however, the credibility of Mr. Carpenter's testimony is an issue for the jury, for, on summary judgment, "neither the trial court nor we are authorized to determine the credibility of statements or testimony made under oath." *Fenberg v. Goggin,* 800 S.W.2d 132, 134 (Mo.App.1990); *See also Pruitt v. Farmers Ins. Co.,* 950 S.W.2d 659, 665 (Mo.App.1997). Rather, such matters are for determination following a complete trial. *Pruitt,* 950 S.W.2d at 665. The jury might accept his testimony and conclude he acted in accordance with his routine on this occasion. On the other hand, the jury would not be required to do so, as the Water District seems to argue. It could instead conclude that Mr. Carpenter's statement that he invariably follows this routine is not credible, given the circumstances and given his motivation in this situation to minimize his own fault.

Therefore, a genuine issue of material fact on the issue of his negligence remains to be resolved. *Bickerton*, 898 S.W.2d at 600. For this reason, we reverse the grant of summary judgment on Counts I and III's allegations of operator negligence.

■ The Larisons alternatively assert in Count II that, even if the operator were not negligent, the Water District is nonetheless liable for their injuries because it knew or should have known of the dangerous condition of the water meter yet failed to remedy or warn them of the condition prior to Mrs. Larison's accident. Clearly, there is no evidence that the operator or other Water District employees were actually aware the Larisons' meter lid was not properly secured. The Larisons note, however, that the operator testified that, while the meter usually stays securely when fastened, it is theoretically possible for a lid to come loose if it is sufficiently jarred when mowing over it with a push mower, causing the water meter lid to slide off and expose the well. They suggest that this establishes the necessary evidence to support their claim that the Water District knew or should have known that the meter could come out of place and so was in a dangerous condition.

We disagree. In the face of the Water District's motion for summary judgment, the Larisons were not entitled to merely rest on the allegations in their pleadings. Rather, they were required to present evidence showing that there was a genuine issue of material fact on their claim that the Water District knew or should have known that a mower could cause the water meter lid could come out of place during normal use. *See generally ITT*, 854 S.W.2d at 380.

The Larisons failed to offer such support for their claims, for they failed to show that any such negligence caused Mrs. Larison's injuries. That is, while they did present the operator's testimony that a push mower could shake lids loose in some circumstances, they admit that there is no evidence that Mrs. Larison had mowed over the meter lid before she fell into the meter well, and the only evidence in the record is that she was mowing around a bush and walked backward and put her foot into the meter well. Thus, nothing but speculation supports the assertion that the mower even rolled over the meter lid, much less that this caused the lid to come loose. For this reason, the claim in Count II that the Water District knew or should have known of the dangerous condition, and that this caused the injury to Mrs. Larison, was pure speculation and could not withstand summary judgment.

## C. Res Ipsa Loquitur Theory

■ The Larisons also claim the trial court erred in dismissing Count IV, their alternative theory of liability under the doctrine of *res ipsa loquitur*. *Res ipsa loquitur* is a rule of evidence that allows the jury to infer from circumstantial evidence that the plaintiff's injury resulted from some negligent act of the defendant without requiring the plaintiff to prove defendant's specific negligence. *Martin v. City of Washington*, 848 S.W.2d 487, 495 (Mo. banc 1993). The theory is available only when the plaintiff is able to show: (1) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (2) the instrumentality involved was under the management and control of the defendant; and (3) the defendant possesses superior knowledge or means of information as to the cause of the occurrence. *Weaks v. Rupp*, 966 S.W.2d 387, 394 (Mo.App.1998); *Logan v. Phillips*, 896 S.W.2d 38 (Mo.App.1994). Whether or not the doctrine applies to the facts and circumstances of a particular case is within the discretion of the trial court. *Id.*

The Larisons argue that they have set forth a valid claim by asserting the Water District had the right to control the water meter lid, that the water meter lid does not normally give way, slide or otherwise become displaced when those in charge use due care, that reasonable inferences permit a determination that the water me-

ter lid gave way, slid or otherwise became displaced as a result of the Water District's negligence, and that, as a result, Ms. Larison was injured. The Water District argues, however, that the Larisons will not be able to produce sufficient evidence to establish the required elements to base a theory of recovery on *res ipsa loquitur* because they can neither prove the Water District had superior knowledge or means of information as to the cause of Mrs. Larison's injury, nor that the instrumentality involved in the accident was under the control of the Water District.

We agree. The Larisons have failed to produce evidence to rebut the Water District's motion for summary judgment on the issue of *res ipsa loquitur*. The Larisons have not established that they have or would be able to produce evidence that the Water District was in control of the water meter lid. Even though the Larisons assert the Water District should be found to have exclusive control over the meter because it is the owner and operator of the water meter systems, the evidence does not support such a finding. Here, the instrumentality causing the injury, the water meter lid, was not in a location where the Water District could control or oversee it at all times. The Water District merely sent one of its employees to the Larisons' meter one time each month in order to perform a reading of the meter. At all other times, the water meter lid was accessible to tampering from extraneous forces. In such a situation, we cannot conclude the Water District was in exclusive control or had the right or ability to control the condition of the water meter lid. Thus, the doctrine of *res ipsa loquitur* cannot be applied. *See Potts v. Velasco*, 926 S.W.2d 931, 933 (Mo.App.1996).

For the reasons stated above, we find the trial court erred in awarding summary judgment on the Larisons' claim under a theory of operator negligence, and we reverse and remand on that theory, but affirm summary judgment on the other theories asserted.

Judge HAROLD L. LOWENSTEIN and Judge ALBERT A. RIEDERER concur.