Randall FRANCIN, Plaintiff/Appellant,

v.

MOSBY, INC., d/b/a Elsevier, Defendant/Respondent.

No. ED 89814.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 8, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 2008.

Application for Transfer Denied April 15, 2008.

William E. Moench, Louis, MO, for appellant.

Curtis C. Calloway, Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Randall Francin ("Francin") appeals the judgment of the trial court granting summary judgment in favor of Mosby, Inc., d/b/a Elsevier ("Elsevier") in Francin's action pursuant to section 213.070 RSMo (2000) [1] of the Missouri Human Rights Act ("MHRA") for discrimination because of his association with a person with a disabil-

---

1. All further statutory references are to RSMo (2000).

ity. Francin argues there was a genuine issue of material fact concerning Elsevier's decision to terminate Francin's employment. We reverse and remand.

Francin began employment with Elsevier in 1991. He worked as a production assistant, which entailed doing layouts of medical periodicals in preparation for printing. Francin held this position until March 2002, when his position was eliminated within the company due to organizational restructuring. Francin was rehired with the company a few months later in the drug consult department as an associate database publishing editor. In his new position, Francin updated drug information and proofread information contained in drug inserts. In 2003, Francin's wife was diagnosed with amyotrophic lateral sclerosis ("ALS"). He discussed his potential rights for leave under the Family Medical Leave Act [2] with a representative from the human resources department at Elsevier. In 2004, Francin's direct supervisor, David Nissen, resigned. Nissen was replaced by A.M. Maheswaran ("Maheswaran"). Maheswaran subsequently conducted interviews with several of the employees. During his interview, Francin informed Maheswaran of his wife's illness. On September 21, 2004, Maheswaran informed Francin that he was discharged from his employment with Elsevier. Francin filed suit under the Missouri Human Rights Act, alleging that Elsevier discriminated against him because of his association with a person with a disability, in violation of section 213.070. Elsevier filed a motion for summary judgment, which was granted by the trial court. The court found that the undisputed material facts failed to create a genuine issue concerning whether Francin's association with his wife was a contributing factor to his termination. As a result, the court concluded that Elsevier was entitled to judgment as a matter of law. Francin now appeals.

In his sole point on appeal, Francin claims the court erred in granting summary judgment in favor of Elsevier because there was a genuine issue of material fact concerning whether his wife's disability was a contributing factor in the decision to terminate his employment.

Initially we note that, "[s]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. The City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). We review the grant of summary judgment *de novo*. *Lewis v. Biegel*, 204 S.W.3d 354, 356 (Mo.App.2006) (citation omitted). We review the record in the light most favorable to the party against whom summary judgment was entered. *Id.* We afford that party the benefit of all reasonable inferences from the record. *Id.* Summary judgment is appropriate only where the record shows there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Id.* A "material fact" is one of such significance or probative value as to control the outcome of litigation. *Id.* If two plausible, but contradictory accounts of essential facts exist in the record, a genuine issue of material fact remains to be resolved because "fair minded people, exercising reasonable judgment could reach different conclusions on the issue in controversy." *Id.; (quoting Larison v. Pub. Water Supply Dist. # 1*, 998 S.W.2d 192, 196 (Mo.App.1999)). As a result, if there is a dispute over facts that

2. 29 U.S.C. 2601 states that the purpose of the Family Medical Leave Act is to "entitle employees to take reasonable leave for medical reasons, ... and for the care of a child, spouse, or parent who has a serious health condition...."

might affect the outcome of the action, summary judgment is not proper because the determination of such facts is for the fact finder at trial. *Id.*

■ As a threshold matter, in its brief Elsevier asserts Francin's claim of discrimination is not a cognizable claim because he only asserted his termination was due to a stated intention to be absent, rather than a real absence. Elsevier's claim is based largely on cases interpreting the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. 12112(b)(4), in Federal courts. Elsevier argues that the MHRA is "patterned under and consistent with" the protections afforded by the ADA. However, Elsevier ignores the fact that while these provisions are consistent, they are not identical. In fact, the Missouri Supreme Court noted the distinction between federal standards and those set forth by the MHRA in *Daugherty,* 231 S.W.3d at 818–19. The court stated that "Missouri's discrimination safeguards under the MHRA ... are not identical to the federal standards and can offer greater discrimination protection." *Id.;* (citing *See Brady v. Curators of University of Missouri,* 213 S.W.3d 101, 112–13 (Mo. App.2006)). While we look to federal employment discrimination cases when interpreting analogous statutes in the MHRA, if the language of the MHRA provision is clear and unambiguous, federal case law which is contrary to the plain meaning of the MHRA is not binding. *Brady,* 213 S.W.3d at 113.

■ Here, section 213.070(4) of the Missouri Human Rights Act provides that it is unlawful to "discriminate in any manner against any other person because of such person's association with any person protected by this chapter." Section 213.070(4) does not qualify this discrimination with any requirement that an employee actually take leave under the Family and Medical Leave Act, as Elsevier attempts to argue. Instead, the statute merely provides a cause of action where an employee is discriminated against for his association with a person protected by the MHRA. Francin claims Elsevier discriminated against him by terminating him because of his association with his wife, who suffered from ALS. Francin presented a cognizable claim for discrimination under section 213.070(4), and Elsevier's argument is without merit.

■ Turning to the merits of Francin's appeal, Francin argues there was a genuine issue of material fact concerning whether his wife's disability was a contributing factor to Maheswaran's decision to terminate him. According to Francin, this genuine issue of material fact is based upon the evidence of Francin's satisfactory performance coupled with the close timing of the decision to his notification to Maheswaran of his wife's condition.

The Missouri Supreme Court recently determined that, "[n]othing in the statutory language of the MHRA requires a plaintiff to prove that discrimination was a substantial or determining factor in an employment decision; if consideration of age, disability, or other protected characteristics contributed to the unfair treatment, that is sufficient." *Daugherty,* 231 S.W.3d at 819. If there is a genuine issue of material fact as to whether Francin's association with his wife was a "contributing factor" in Elsevier's decision to terminate him, summary judgment is not proper. *Id.* at 820. Thus, we must consider whether there is such a genuine issue of material fact.

In an August 17, 2004, memorandum written to Linda Duncan, Maheswaran's immediate supervisor, Maheswaran begins by noting he and Francin discussed Francin's wife's illness. Maheswaran also states that Francin informed him he was

comfortable proofreading long monographs; however, Francin "appears to show no interest in taking on new responsibilities or assignments." In his deposition, Francin acknowledges they discussed his wife's illness at this meeting, as well as his potential need for leave to care for his wife. Francin also testified that he informed Maheswaran he was "most comfortable" with the long monographs, but he could do the short ones or any other future projects coming into the department. Maheswaran wrote another memorandum on August 20, 2004 regarding additional items discussed with Francin. This memorandum also begins with a discussion of Francin's need for leave, as well as Francin's request for part-time employment. In this memorandum, Maheswaran notes that Francin communicated he did not consider himself to be a good fit for the position. However, in his deposition, Francin testified he did not mean this, and he was simply having a bad day. In the August 20 memo, Maheswaran also notes they discussed expectations for the job responsibilities, and Maheswaran states "it was clear" to him that Francin was uncomfortable with new responsibilities or assignments. However, in his deposition, Francin testified he did not express any discomfort with new responsibilities or assignments. Instead, Francin testified he informed Maheswaran he welcomed new projects and felt he could do a good job on them.

In addition, although there was evidence from Kathy Dashley, and Amy Rickles, senior members of the drug consult department, regarding errors made by Francin during his tenure as an associate database editor, there was also evidence of Francin's good performance in the drug consult department. An affidavit of David Nissen, Francin's former supervisor, was submitted. Nissen also supervised Kathy Dashley and Amy Rickles. In the affidavit, Nissen states that he recalled Kathy Dashley approaching him with complaints about Francin not being able to keep up with the work on two occasions. Nissen notes this occurred after he was informed of Francin's wife's illness, and Nissen stated he "found it odd that no one ever complained once about Mr. Francin's performance until now." Nissen also stated he did not recall seeing the errors about which Dashley complained. According to Nissen, Francin was a very good employee, a team player, and he was always willing to learn new approaches and do the work assigned. Nissen stated that Francin "more than adequately performed his work duties."

Moreover, Francin received a "merit award increase" in salary in January 2004. The company performed evaluations based upon its personnel development plan. This plan is developed at the beginning of the year. A final review is performed at the end of the year and ratings are assessed, upon which compensation is based. Nissen's evaluation of Francin was positive, giving him good ratings [3] on Francin's objectives. Although Nissen did note that Francin needed some improvement in accuracy, he also stated that entering drugs was Francin's strength. He also stated Francin contributed to the team effort "and is always willing to help out." Nissen noted Francin was "interested in being a strong member of the team and producing high quality products." The final comment on the evaluation was that Francin was "a dependable and dedicated member" of the team. Based upon the projected

---

**3.** According to Francin's deposition testimony, the rating scale was one to four, with four being the highest rating. Francin received twos and threes on his evaluation in each category.

ratings from this evaluation, Francin received a three percent increase in salary.

In addition to the conflicting facts concerning Francin's performance in his position as associate database publishing editor, Maheswaran testified after his third meeting with Francin, which took place on August 27, he began to take steps toward Francin's termination. Although there was evidence that Francin had informed other personnel at Elsevier about his wife's illness, Maheswaran had only learned of the illness ten days prior to the third meeting. After this meeting, Maheswaran testified he spoke with his immediate supervisor, and he also discussed the situation with the human resources department. Although Francin was not officially terminated until September 21, it is clear from Maheswaran's testimony he had made the decision to terminate Francin prior to this date, and close in time to his learning of Francin's wife's illness. Moreover, memoranda of the previous two meetings begin with discussion of Francin's wife's illness and its effect on Francin, as well as Francin's need for leave and his request to work part-time. It is a reasonable inference from these memos that Maheswaran considered Francin's wife's illness in his evaluation of Francin. The contradictory evidence regarding Francin's job performance and the memos from Maheswaran's meetings with Francin noting the illness and effect on Francin, coupled with the close timing of Francin's termination is sufficient to create a genuine issue of material fact concerning whether Francin's wife's illness was a contributing factor to Elsevier's decision to terminate him. Therefore, Elsevier was not entitled to judgment as a matter of law, and the trial court erred in granting summary judgment in favor of Elsevier.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion[4].

ROY L. RICHTER and GLENN A. NORTON, JJ., concur.

---

4. Francin filed a motion for attorney's fees on appeal pursuant to section 213.111.2. The motion is denied without prejudice to Francin's right to seek attorney's fees in the event of a recovery on the merits.